## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: A.M., B.M., D.M., H.M., & P.M.**

**No. 15-0163** (Raleigh County 13-JA-034 through 13-JA-039)

**FILED**

September 21, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father H.M., by counsel P. Michael Magann, appeals the Circuit Court of Raleigh County's January 23, 2015, order terminating his parental rights to A.M., B.M., D.M., H.M., and P.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Laura E. Spadaro, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in denying his motions to extend his post-adjudicatory improvement period or, alternatively, grant him a dispositional improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2013, the DHHR filed an abuse and neglect petition alleging that the conditions in petitioner's home rendered it uninhabitable. According to the petition, the DHHR received a referral that then-thirteen-year-old H.M. was planning to commit suicide due to the conditions in the home. When authorities advised the parents of the situation, they refused to come to the school to pick up H.M. and stated they wanted her to ride the bus home and that they would take care of the matter the next day. H.M. spoke with a Child Protective Services ("CPS") worker and indicated that she felt depressed; that her parents smoke marijuana and sleep all the time; and that the parents often leave several of the other children with their grandmothers. When the children were in the home, H.M. was required to perform many caretaking functions for the

---

[1]The abuse and neglect proceedings below included a sixth child who reached the age of majority during the pendency of that action and was dismissed. Accordingly, that child is not addressed on appeal.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

younger children, including changing diapers and giving baths. The petition also noted prior substantiated CPS cases against the parents. Subsequently, the DHHR investigated the conditions in the home and found it covered in cobwebs with roaches crawling on walls, dishes, and the furniture, including a crib in which P.M. was sleeping. The home also contained trash and dirty dishes piled on the floors. Further, the home was without a bathroom or running water. Outside, the CPS worker observed piles of dog feces and approximately forty bags of trash.

In June of 2013, the DHHR filed an amended petition alleging a history of domestic violence between the parents; that the mother tested positive for opiates upon A.M.'s birth; substantiated drug abuse by both parents; and that the mother was involved in a DUI automobile accident in which two of the children were severely injured. The amended petition also alleged that the parents neglected A.M. and P.M.'s dental health to the extent that the children's teeth were either broken off or decayed and would likely require surgical removal. Two days later, the circuit court interviewed B.M., who indicated that he witnessed constant fighting in the home and recounted a domestic violence incident between himself and petitioner where the two engaged in a fist-fight for which petitioner was arrested. He further described seeing his parents abuse multiple drugs and described the deplorable conditions in the home.

Thereafter, the circuit court held an adjudicatory hearing and found petitioner to be an abusing parent, and petitioner later stipulated to neglecting the children by abusing drugs and alcohol. The circuit court also granted petitioner a post-adjudicatory improvement period over objections from both the DHHR and the guardian. At a hearing in October of 2013, the circuit court accepted the mother's voluntary relinquishment of her parental rights to the children. As such, petitioner was thereafter required to care for all the children independently. Further, as a condition of his post-adjudicatory improvement period, petitioner was required to successfully complete outpatient substance abuse education; resume psychiatric treatment and maintain appropriate care for his own mental and physical health issues for six months; and demonstrate the ability to maintain gainful employment and a habitable home.

In April of 2014, the DHHR filed a motion seeking termination of petitioner's post-adjudicatory improvement period and parental rights. The DHHR noted that while petitioner made some minimal improvements, he failed to successfully complete his goals. At the time, petitioner resided in a one-bedroom trailer that was not adequate for him and his children. He further remained unemployed. Thereafter, the circuit court held a series of dispositional hearings beginning in July of 2014 and ending in December of 2014. During these hearings, the circuit court heard testimony from the psychologist that evaluated petitioner. According to the psychologist, petitioner's history was consistent with a diagnosis of Bipolar II disorder, generally considered to be a permanent condition. Petitioner was also diagnosed with personality disorder, which can be difficult to treat. According to the psychologist, petitioner's conditions impacted the children's safety in a number of ways and petitioner required additional substance abuse education despite having produced negative results from random drug screens. Ultimately, the psychologist concluded that petitioner was unlikely to complete the recommended interventions and benefit such that he could rectify his parenting issues. The circuit court also heard from the DHHR employee who supervised petitioner's visitations with the children. According to this witness, there was not a strong bond between petitioner and the children, as opposed to the strong bonds the children formed with their foster families. Moreover, this employee testified

that petitioner would require assistance with the children if he was their caregiver. Ultimately, the circuit court denied petitioner's motion to extend his post-adjudicatory improvement period and his motion for a dispositional improvement period. The circuit court thereafter terminated petitioner's parental rights. Petitioner appeals from the dispositional order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court denying petitioner's motions to extend his post-adjudicatory improvement period and grant him a dispositional improvement period. Petitioner's argument on this issue is based almost entirely on the DHHR's alleged failure to obtain him a medical card because he argues that he needed the card as a second form of identification to obtain employment and housing. According to petitioner, he made significant progress in his improvement period and could have fully complied with the same had he been provided a medical card to serve as a second form of identification. The Court, however, does not agree, as petitioner's argument on this issue ignores the fact that he had ample time to secure his own identification and further failed to fully comply with the terms of his post-adjudicatory improvement period.

While petitioner argues that he did not ultimately obtain his medical card until April of 2014, the record is clear that petitioner's parental rights were not terminated until December of 2014. As such, petitioner had an additional eight months following his receipt of the medical card in which to complete the terms of his improvement period and establish that returning the children to his care was in their best interests. Moreover, the record shows that petitioner, at least in part, was responsible for the delay in obtaining the medical card in question. Specifically, when asked at the dispositional hearing why he did not obtain a medical card earlier in the proceedings, petitioner testified that it was because he "never applied for one." Finally, the record is devoid of any additional efforts petitioner made to obtain other photo identification, such as a driver's license, throughout the approximately three year period during which this matter was pending below.

In order to grant an extension to a post-adjudicatory improvement period under West Virginia Code § 49-6-12(g), the circuit court was required to find that petitioner "substantially complied with the terms of the improvement period[.]" Simply put, the record does not support such a finding. The terms of petitioner's improvement period required that he obtain suitable housing and employment to remedy the conditions of abuse and neglect. While it is true that petitioner did complete some terms of his improvement period, the record is clear that petitioner did not substantially comply with the terms of his improvement period. This is evidenced by the circuit court's finding that, as of December 1, 2014, petitioner "conceded that he could not accommodate the children if they moved in with him" at his current residence. Moreover, while petitioner did obtain employment, the circuit court specifically found that he lacked the ability to support himself and the five children. Further, the circuit court found that petitioner "has extreme difficulty managing and handling his young five . . . children, and such problems have been identified at the supervised visitation sessions" that occurred below. Ultimately, the circuit court found that petitioner "only minimally and marginally" addressed the issues of abuse and neglect in the home during the post-adjudicatory improvement period. As such, the circuit court did not abuse its discretion in denying petitioner an extension to his post-adjudicatory improvement period, as he failed to establish that he substantially complied with the terms thereof.

This evidence also supports the circuit court's denial of petitioner's motion for a dispositional improvement period. Pursuant to West Virginia Code § 49-6-12(c)(2), a circuit court may grant a dispositional improvement period when "[t]he respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . ." As noted above, the circuit court was presented with ample evidence that petitioner previously failed to comply with the terms of his post-adjudicatory improvement period. As such, the record is clear that petitioner could not satisfy this burden, and we find no error in the circuit court denying petitioner's motion for a dispositional improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court and its January 23, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: September 21, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II